Squire Patton Boggs (US) LLP
Eric J. Troutman (State Bar # 229263)
eric.troutman@squirepb.com
Brent R. Owen (*Pro hac*)
brent.owen@squirepb.com
555 South Flower Street, 31st Floor
Los Angeles, California 90071
Telephone: +1 213 624 2500
Facsimile: +1 213 623 4581

Attorneys for Defendant
AML NETWORK LTD.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN LYNCH, an individual, BARBARA QADRI, an individual, JONATHAN RUELAS, an individual, RONAN SHEPHERD, an individual, JAMES ANDREWS, an individual, ANGELA NEILSON, an individual, and JULIA DURWARD, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> AML NETWORK LTD., a Hong Kong company, DOMAINS BY PROXY, LLC, a Delaware limited liability company, ENOM LLC, a Delaware limited liability company, and DOES 1-100, <br><br> Defendants. | Case No. 2:21-cv-03574-GW-RAO <br><br> **DEFENDANT AML NETWORK LTD.'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT UNDER RULE 12(b)(2) OR, IN THE ALTERNATIVE, TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)** <br><br> *[Filed concurrently with Declaration and Proposed Order]* <br><br> Complaint Served: March 30, 2021 <br> Current Response Date: July 6, 2021 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

**PLEASE TAKE NOTICE** that, on September 9, 2021, at 8:30 a.m., or as soon thereafter as counsel may be heard in Courtroom 9D of the above-titled Court, located at 350 West 1st Street, Los Angeles, California 90012, defendant AML Network will and hereby does move to dismiss Plaintiffs' Complaint.

This motion is made pursuant to Federal Rule Civil Procedure 12(b)(2) on the grounds that Plaintiffs cannot establish personal jurisdiction over AML, a Hong Kong company. Specifically, Plaintiffs cannot establish general jurisdiction because AML is a Hong Kong company with its principal office in Hong Kong and it is not otherwise "at home" in California. Additionally, Plaintiffs cannot establish specific jurisdiction because AML did not send the emails at issue, much less intentionally send them into California or to Plaintiffs. Rather, Plaintiffs' claims arise from the conduct of AML's independent contractors, not AML. This Court's exercise of personal jurisdiction over AML would offend traditional notions of fair play and justice.

Even if this Court could exercise personal jurisdiction, Plaintiffs fail to state a claim for two independent reasons. First, Plaintiffs' Complaint does not sufficiently allege that AML is liable because Plaintiffs allege only that AML "appears" in the emails at issue. They do not allege that AML sent the emails or is vicariously liable for the parties who sent the emails. Plaintiffs' argument that AML is *per se* liable misreads the controlling statute and California law. Second, if Plaintiffs' Complaint does state a claim, the law violates the First Amendment as applied.

**Local Rule 7-3 Compliance.** This motion is made following the conference of counsel pursuant to Central District Local Rule 7-3, which took place on June 2, 2021.

///

///

///

///

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Case No. 2:21-CV-03574
MOTION TO DISMISS

1       This motion is based on the instant notice, the accompanying Memorandum

2  and Points of Authorities, and the Declaration of Chan Kai Yu Rudy.

3

4  Dated:  July 6, 2021                   SQUIRE PATTON BOGGS (US) LLP

5

6                               By: *s/ Eric J. Troutman*

7                                   Eric J. Troutman
                                 Brent R. Owen (Pro Hac)

8                    Attorneys for Defendant AML
                  NETWORK LTD.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Case No. 2:21-CV-03574
MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.     Introduction .................................................................................................... 1

II.    Statement of Facts ......................................................................................... 2

    a.     AML is a Hong Kong company that did not send the emails at issue ................................................................................................... 2

    b.     Plaintiffs do not allege AML sent them emails in California .............. 3

III.   The Court Lacks Personal Jurisdiction Over AML ...................................... 3

    a.     Legal standard ..................................................................................... 3

    b.     Argument ............................................................................................. 4

        i.     There is no general jurisdiction over AML ............................... 4

        ii.    There is no specific jurisdiction over AML because it did not purposefully send or direct the emails at issue to California ................................................................................. 6

            1.     AML did not purposefully avail itself of the privilege of conducting business in California ................ 7

            2.     Plaintiffs' claims do not arise out of AML's California-related activities ........................................... 9

            3.     It would offend traditional notions of fair play and substantial justice for this Court to exercise jurisdiction over AML ....................................................... 9

IV.    Plaintiffs' Claims Fail Because They Do Not Allege AML Sent Or Authorized The Emails ............................................................................... 10

    a.     Legal standards ................................................................................. 10

    b.     Plaintiffs do not adequately allege that AML is vicariously liable and so their claims fail ....................................................................... 12

        i.     Under California law, vicarious liability requires a joint venture, agency, or an employment relationship—which Plaintiffs fail to allege ........................................................ 12

        ii.    The statute's strict liability does not relieve Plaintiffs of burden to plead that AML is responsible, directly or vicariously, for the emails ............................................... 14

        iii.   The California Supreme Court would not follow *Hypertouch, Inc. v ValueClick, Inc.*'s conflation of strict liability with vicarious liability .......................................... 16

    c.     If Plaintiffs have adequately plead a claim, the California law violates the First Amendment as applied to AML in this circumstance ..................................................................................... 18

V.     Conclusion .................................................................................................. 20

SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, D.C.  20037

Case No. 2:21-CV-03574
MOTION TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahmed v. HSBC Bank USA, N.A.,*
No. 15-edcv-2057-FMO, 2017 U.S. Dist. LEXIS 183921 (C.D. Cal.
Nov. 6, 2017) ............................................................................................16

*Alsop v. Carolina Custom Prods, Inc.,*
No. 07-cv-0212, 2007 U.S. Dist. LEXIS 65679 (C.D. Cal. June 29,
2007) .......................................................................................................7, 9

*Asahi Metal Industry Co., Ltd. v. Superior Court,*
480 U.S. 102 (1987) ...............................................................................9, 10

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,*
223 F.3d 1082 (9th Cir. 2000) ....................................................................5

*Brand v. Menlove Dodge,*
796 F.2d 1070 (9th Cir. 1986) ....................................................................5

*Bristol-Myers Squibb Co. v. Superior Court of California,*
137 S. Ct. 1773 (2017) ...........................................................................4, 6

*Brown v. USA Taekwondo,*
40 Cal App. 5th 1077 (2019) ...............................................................13, 14

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985) ...............................................................................6, 9

*Burnham v. Superior Court,*
495 U.S. 604 (1990) ....................................................................................3

*Carey v. Population Servs. International,*
431 U.S. 678 (1977) ..................................................................................20

*Central Hudson Gas & Electric Corporation v. Public Service
Commission,*
447 U.S. 557 (1980) .............................................................11, 18, 19, 21

*Congoleum Corp. v. DL W Aktiengesellschaft,*
729 F.2d 1240 (9th Cir. 1984) ....................................................................6

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

*Cybersell Inc. v. Cybersell Inc.*,
   130 F.3d 414 (9th Cir. 1997) ............................................................................. 10

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ........................................................................................... 4

*Dana's R.R. Supply v. AG*,
   807 F.3d 1249 (11th Cir. 2015) .................................................................... 18, 19

*Daniels v. Select Portfolio Serv., Inc.*,
   246 Cal.App.4th 1150 (2016) ........................................................................... 12

*Desire, LLC v. Manna Textiles, Inc.*,
   986 F.3d 1253 (9th Cir. 2019) ......................................................................... 12

*Edenfield v. Fane*,
   507 U.S. 761 (1993) .................................................................................. 11, 18

*Falkowski v. Imation Corp.*,
   309 F.3d 1123 (9th Cir. 2002) ......................................................................... 10

*Foti v. City of Menlo Park*,
   146 F.3d 629 (9th Cir. 1998) ........................................................................... 11

*Giangola v. Walt Disney World Co.*,
   753 F. Supp. 148 (D.N.J. 1990) ........................................................................ 7

*Gitlow v. New York*,
   268 U.S. 652 (1925) ........................................................................................ 11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) .......................................................................................... 3

*Greater New Orleans Broad. Ass'n, Inc. v. United States*,
   527 U.S. 173 (1999) ........................................................................................ 19

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) .......................................................................................... 4

*Henderson v. United Student Aid Funds, Inc.*,
   918 F.3d 1068 (9th Cir. 2019) ......................................................................... 16

*Hypertouch, Inc. v. ValueClick, Inc.*,
   192 Cal. App. 4th 805 (2011) .................................................................... 16, 17

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No. 2:21-CV-03574
MOTION TO DISMISS

*Lewis v. Tel Employees Credit Union*,
  87 F.3d 1537 (9th Cir. 1996) ................................................................................ 11

*Moore v. R.G. Indus., Inc.*,
  789 F.2d 1326 (9th Cir. 1986) .............................................................................. 12

*Neuromechanical, LLC v. Kiro Kids Pty. Ltd.*,
  No. 10-cv-1068, 2011 U.S. Dist. LEXIS 12150 (D. Ariz. Jan. 31,
  2011) ......................................................................................................................... 7

*Ogden Martin Sys., Inc. v. San Bernardino Cty.*,
  932 F.2d 1284 (9th Cir. 1991) .............................................................................. 17

*Omeluk v. Langsten Slip & Batbyggeri A/S*,
  52 F.3d 267 (9th Cir. 1995) .................................................................................... 7

*Orosco v. Sun-Diamond Corp.*,
  51 Cal. App. 4th 1659 (1997) ............................................................................... 13

*Phillips v. Worldwide Internet Sols.*,
  No. 05-cv-5125, 2006 U.S. Dist. LEXIS 44152 (N.D. Cal. June 20,
  2006) ......................................................................................................................... 6

*In re Primus*,
  436 U.S. 412 (1978) ............................................................................................... 19

*Rano v. SIPA Press, Inc.*,
  987 F.2d 580 (9th Cir. 1993) .................................................................................. 4

*Reebok Int'l, Ltd. v. McLaughlin*,
  49 F.3d 1387 (9th Cir. 1995), *cert denied*, 516 U.S. 908 ................................... 4

*Retail Digital Network, LLC v. Prieto*,
  861 F.3d 839 (9th Cir. 2017) (en banc) .............................................................. 11

*Roberts v. Craig*,
  124 Cal. App. 2d 202 (1954) ................................................................................ 12

*Rowan v. United States*,
  397 U.S. 728 (1970) ............................................................................................... 19

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ......................................................................... 1, 4, 5

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

- iv -

*Secci v. United Independent Taxi Drivers, Inc.*,
   8 Cal. App. 5th 846 (2017) ................................................................. 13

*Stanford Ranch, Inc. v. Maryland Cas. Co.*,
   89 F.3d 618 (9th Cir. 1996) ..........................................................10, 11

*United States v. Cyberheat, Inc.*,
   CV-05-457-TUC-DCB, 2007 U.S. Dist. LEXIS 15448 (D. Ariz.
   March 2, 2007) .................................................................................... 12

*Vandermark v. Ford Motor Co.*,
   61 Cal. 2d 256 (1964) ......................................................................... 15

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer
   Council*,
   425 U.S. 748 (1976) ......................................................................11, 19

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014) ........................................................................ 6, 9

*Wimberly v. Derby Cycle Corp.*,
   56 Cal. App. 4th 618 (1997) ..........................................................15, 16

*Zoobuh, Inc. v. Williams*,
   No. 2:13-cv-0791, 2014 U.S. Dist. LEXIS 175737 (D. Utah. Dec.
   18, 2014) .............................................................................................. 8, 9

**Statutes**

47 U.S.C. § 227(b)(1)(A)(iii) ........................................................................ 16

Cal. Bus. & Prof. Code § 17529(j) ............................................................... 19

Cal. Bus & Prof. Code § 17529.1(a) ............................................................ 14

Cal. Bus. & Prof. Code § 17529.5 *et seq.* ...................................1, 3, 11, 18

Cal. Bus. & Prof. Code § 17529.5(2) ........................................................... 14

Cal. Bus. & Prof. Code § 17529.5(a) ........................................................... 14

Cal. Code of Civil Procedure § 410.10 ........................................................... 4

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SQUIRE PATTON BOGGS (US) LLP**
555 South Flower Street, 31st Floor
Los Angeles, California 90071

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(2)..................................................2, 3

Federal Rule of Civil Procedure 12(b)(6)..............................................1, 10

United States Constitution, First Amendment..................................*passim*

United States Constitution, Fourteenth Amendment.............................11

Case No. 2:21-CV-03574
MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  Introduction

Plaintiffs, California residents, ask this Court to adjudicate a dispute against AML Network, Ltd. ("AML"), a Hong Kong company.  Plaintiffs' two causes of action are for receiving unsolicited commercial emails that they claim violate California's anti-spam statute codified at Business & Professions Code § 17529.5 *et seq.*  AML does not reside in California, nor does it operate or conduct business in California, and has not purposefully directed any conduct giving rise to Plaintiffs' claims in California.  This Court lacks personal jurisdiction over AML.

Specifically, Plaintiffs' complaint contains no allegations to support this Court's exercise of jurisdiction over AML, and the declaration provided with this Motion defeats any argument for specific jurisdiction over AML.  AML's employees, officers, property, sales, and operations, along with witnesses and documents related to the claims and defenses in this action are located in Hong Kong—thousands of miles from this California courthouse.  Moreover, Plaintiffs do not allege (nor could they) that AML has directed any of its commercial activities towards California.  Plaintiffs cannot make a *prima facie* showing of personal jurisdiction through admissible evidence.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  This Court should dismiss this action because it lacks personal jurisdiction over AML.

Even if this Court could exercise personal jurisdiction, Plaintiffs fail to state a claim for two independent reasons.  First, Plaintiffs' Complaint does not sufficiently allege that AML is liable because Plaintiffs allege only that AML "appears" in the emails at issue. They do not allege that AML sent the emails or is vicariously liable for the parties who sent the emails. Plaintiffs' argument that AML is *per se* liable misreads the controlling statute and California law. Second, if Plaintiffs' Complaint does state a claim, the law violates the First Amendment as applied.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Case No. 2:21-CV-03574
MOTION TO DISMISS

II.  **Statement of facts**

    a.  **AML is a Hong Kong company that did not send the emails at issue**

AML is a Hong Kong Private Limited Company with its principal place of business located at Suite 18, 28th Floor, Metropole Square, 2 On Yiu Street, Shatin, Hong Kong.  (Ex. 1, Chan Kai Yu Rudy Declaration ("Rudy Decl."), ¶ 2.)  AML operates the Qpid Network, which focuses on the production and operation of social networking and communication services platform.  (*Id*., ¶ 8.)  AML principally operates dating websites, which facilitate communication between members via transmission of translated emails, online and offline messaging, live-video sharing and etc.  (*Id.*, ¶ 9.)

AML's owners, executives, and employees are all located in Hong Kong.  (*Id.*, ¶ 3.)  AML does not employ anyone or do any business in California.  (*Id.*) AML does not own, use, or possess any real estate, offices, property, assets, telephone listings, mailing address, bank accounts, or any other assets in California.  (*Id.*, ¶ 4.)  Rather, AML provides all of its services from Hong Kong, where its employees and offices are located—including its servers and data storage.  (*Id.*, ¶ 5.)  Nor is AML licensed or regulated by any California government agency.  (*Id.*, ¶ 6.)

AML does not send any emails to consumers with whom it does not have an existing or current business relationship.  Instead, independent contractors known as "publishers" or "affiliates" send emails advertising AML's products and services.  (*Id.*, ¶ 11.)  Additionally, AML requires publishers to comply with applicable laws and regulations and follow AML's email compliance policy; publishers control all aspects of transmitting the emails and make decisions concerning the emails themselves, including choosing any email's recipient.  (*Id.*, ¶¶ 11-12; *see also id.*, Ex. A, ¶ 7.3 (forbidding affiliate from sending unsolicited commercial email)).  It follows that AML does not know, and has no control over, where the emails are sent or to whom, other than to prohibit publishers from sending email advertisements to email

SQUIRE PATTON BOGGS (US) LLP<br>555 South Flower Street, 31st Floor<br>Los Angeles, California 90071

1    addresses associated with recipients who have requested to "opt-out" of receiving

2    emails advertising AML's services.  (*Id.*, ¶ 13.)

3        **b.    Plaintiffs do not allege AML sent them emails in California**

4        Plaintiffs allege that they are California residents.  (Compl., ¶ 4.)  They contend

5    that they received "at least 1,017 unlawful Unsolicited Commercial Emails ('spams')

6    that violate Section 17529.5 of the California Business & Professions Code."  (*Id.*, ¶

7    1.)  However, they admit that AML did not send the emails and that third parties did

8    so.  (*Id.*, ¶¶ 2, 49.)  Plaintiffs thus do not allege that AML sent the emails, drafted the

9    emails, controlled the content of the emails, chose the recipients of the emails, or

10    obtained the domain names from which the emails were sent.  Instead, the two claims

11    in Plaintiffs' Complaint are premised on the actions of AML's "numerous third-party

12    advertising networks and affiliates (also known as 'publishers')[.]"  (*Id.*, ¶ 2.)  But

13    Plaintiffs do not allege that AML *knew* of the allegedly illegal emails; rather,

14    Plaintiffs contend that AML is "strictly liable" even if AML did not know "that the

15    spams were sent."  (*Id.*, ¶ 49.)  Further, Plaintiffs do not allege that they engaged with

16    AML in any way in California.  Indeed, as explained in the attached declaration,

17    AML did not know of these allegations until this litigation.  (Rudy Decl., ¶ 10; *see*

18    *also id.*, ¶ 15 (explaining AML's terms and conditions prohibit "deceptive language

19    or misleading URLs [and prohibit] unsolicited commercial email, spam, or other

20    illegal or unethical means").

21    **III.    The Court lacks personal jurisdiction over AML**

22        **a.    Legal standard**

23        Plaintiffs must establish personal jurisdiction or else face dismissal of their

24    action.  Fed. R. Civ. P. 12(b)(2); *see Burnham v. Superior Court*, 495 U.S. 604, 608

25    (1990) (requiring that court have personal jurisdiction over a defendant to proceed).

26    A court may only exercise personal jurisdiction over a non-resident defendant if

27    doing so comports with the Fourteenth Amendment's Due Process Clause because it

28    "exposes defendants to the State's coercive power."  *Goodyear Dunlop Tires*

Case No. 2:21-CV-03574
MOTION TO DISMISS

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

*Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011); *see also* Cal. Code of Civil Procedure § 410.10 (personal jurisdiction to the full extent allowed by due process)

There are two types of personal jurisdiction: general and specific. *Reebok Int'l, Ltd. v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir. 1995), *cert denied*, 516 U.S. 908. General jurisdiction exists where it is established that the defendant has "continuous and systematic contacts with the forum that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Rano v. SIPA Press, Inc.*, 987 F.2d 580, 587 (9th Cir. 1993). Specific jurisdiction exists only if the conduct alleged in the complaint is sufficiently related to the claims at issue. *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1779 (2017). Plaintiffs bear the burden of making a *prima facie* showing of personal jurisdiction through admissible evidence. *Schwarzenegger*, 374 F.3d at 800.

### b. <u>Argument</u>

#### i. <u>There is no general jurisdiction over AML</u>

Plaintiffs cannot meet their burden to establish this Court's general jurisdiction over AML, a Hong Kong company with no connection to California.

General jurisdiction exists over a "foreign corporation" only "when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render it essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear v. Dunlop Tires Operations, S.A. v. Brown*, 563 U.S. 915, 919) (holding that "Daimler is not 'at home' in California, and cannot be sued there for injuries" attributed to conduct that occurred elsewhere)). Before the Court can exercise general jurisdiction over a foreign company, the company must have "continuous and systematic general business contacts" that "approximate physical presence" in California. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984) (holding that the court could not exercise general jurisdiction over company where defendant did not have a place of business in forum state, had never been licensed to do business there,

Case No. 2:21-CV-03574
MOTION TO DISMISS

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

and despite existence of other connections to the forum state). The cases "demonstrate that 'substantial' is intended to be a fairly high standard." *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986) (gathering cases). A business with no operations in California does not meet this "exacting standard." *See, e.g.*, *Schwarzenegger*, 374 F.3d at 801 ("This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." (citation omitted)).

Here, AML is not "at home" in California. AML is a Hong Kong company with its principal place of business in Hong Kong. (Rudy Decl., ¶ 2.) AML's owners, executives, and employees are all located in Hong Kong. (*Id.*, ¶ 3.) AML does not employ anyone in California. (*Id.*) AML does not own, use, or possess any real estate, offices, property, assets, telephone listings, mailing address, bank accounts, or any other assets in California. (*Id.*, ¶ 4.) Rather, AML manages all of its business operations from Shatin, Hong Kong, where its employees and offices are located. (*Id.*, ¶ 5.) Nor is AML licensed or regulated by any California government agency. (*Id.*, ¶ 6.)

Further, Plaintiffs alleged receipt of marketing emails from third-party publishers that mention AML is insufficient to confer general jurisdiction over AML. The Ninth Circuit has explained that a company that "is not registered or licensed to do business in California . . . maintains no bank accounts" and does not "target . . . advertising toward California" is not subject to general jurisdiction in California. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). That is true even if some California consumer might incidentally use the company's services. *See id.* (opining that "occasional, unsolicited sales" of tournament tickets and merchandise to California residents are insufficient to create general jurisdiction). Indeed, applying this precedent, at least one court has concluded in a similar spam email case that a business's alleged partnership with California vendors did not

support general jurisdiction. That is because "engaging in commerce with residents of the forum state is not in and of itself the kind of activity [equivalent to] physical presence within the state's borders." *Phillips v. Worldwide Internet Sols.*, No. 05-cv-5125, 2006 U.S. Dist. LEXIS 44152, at *15 (N.D. Cal. June 20, 2006) (internal quotations and citations omitted); *see also Congoleum Corp. v. DL W Aktiengesellschaft*, 729 F.2d 1240, 1242 (9th Cir. 1984) (opining that even a sales force in a forum state is insufficient to support general jurisdiction in that state).

Accordingly, this Court should not exercise general jurisdiction over AML.

ii.     **There is no specific jurisdiction over AML because it did not purposefully send or direct the emails at issue to California**

Because there is no general jurisdiction over AML, Plaintiffs must establish specific jurisdiction or face dismissal. Plaintiffs cannot establish specific jurisdiction because there is no evidence AML purposefully availed itself of the privilege of conducting business in California.

Specific jurisdiction exists only if Plaintiffs' action arises out of or is sufficiently related to the defendant's contacts with the forum. *Bristol-Myers Squibb*, 137 S. Ct. at 1780. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 775 (1984)). Mere "foreseeability of causing *injury*" in a particular State is "not a 'sufficient benchmark' for exercising personal jurisdiction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citations and internal quotation marks omitted). Nor is the "unilateral activity of those who claim some relationship with a nonresident defendant" sufficient contact for jurisdiction. *Id.*

Rather, to meet their burden, Plaintiffs must establish: (1) the foreign defendant does some act by which it purposefully avails itself of the privilege of conducting activities in the forum—invoking the benefits and protections of its laws;

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Case No. 2:21-CV-03574
MOTION TO DISMISS

1   (2) Plaintiffs' claims arise out of or results from the foreign defendants' forum-related

2   activities; and (3) the exercise of jurisdiction would be reasonable. *Omeluk v.*

3   *Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995).

             1.     AML did not purposefully avail itself of the privilege of
                       conducting business in California

5         Plaintiffs cannot show that AML took any actions that invoked the benefits or

6   protections of California.  Even if, as Plaintiffs allege, advertisements associated with

7   AML reached consumers in California, that incidental connection is insufficient to

8   establish purposeful availment.  *See Alsop v. Carolina Custom Prods, Inc.*, No. 07-

9   cv-0212, 2007 U.S. Dist. LEXIS 65679, at *7 (C.D. Cal. June 29, 2007) (discussed

10  next); *see also Neuromechanical, LLC v. Kiro Kids Pty. Ltd.*, No. 10-cv-1068, 2011

11  U.S. Dist. LEXIS 12150, at *3 (D. Ariz. Jan. 31, 2011) (holding that advertisements

12  sent to consumers, some of whom were Arizona residents, did not satisfy personal

13  jurisdiction because there was no evidence the defendants directed the

14  advertisements to particular existing customers known to be Arizona residents);

15  *Giangola v. Walt Disney World Co.*, 753 F. Supp. 148, 155 (D.N.J. 1990) (dismissing

16  for lack of personal jurisdiction and explaining that with "modern advertising and

17  national media publications," a mere advertisement to the forum is insufficient to

18  establish personal jurisdiction over a company without other forum-related contacts).

19        In *Alsop*, for instance, the Court rejected an argument for specific jurisdiction

20  over a motorcycle company where the company "displayed a motorcycle" in

21  California that was the subject of the suit.  Critically, the Court explained, the

22  motorcycle company did not "purposefully avail itself" of California's laws because

23  the motorcycle was not in "Defendant's possession, custody, or control" when it was

24  displayed; nor did the company otherwise engage in California business during that

25  advertising campaign.  Given that, plaintiff failed to satisfy their burden "of

26  establishing that Defendant purposefully availed itself of California law."  2007 U.S.

27  Dist. LEXIS 65679 at *16-17; *see also Zoobuh, Inc. v. Williams*, No. 2:13-cv-0791,

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Case No. 2:21-CV-03574
MOTION TO DISMISS

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

2014 U.S. Dist. LEXIS 175737, *3-4 (D. Utah. Dec. 18, 2014).  It is not enough, in other words, for a company to have some incidental contact with California.

Indeed, courts across the country apply the same reasoning to email advertisements sent by third-party publishers—consistently refusing to exercise specific jurisdiction over a company that is merely advertised in email correspondence.  Consider *Zoobuh*.  That court granted defendant's motion to dismiss for lack of personal jurisdiction. The plaintiff alleged that the defendant sent or caused to be sent thousands of unlawful advertising emails to plaintiff. *Id.*, at *1. Defendant explained that third-party publishers had sent the emails, and that defendant did not exercise "involvement with, or control over, the origination, approval, or delivery of the emails." *Id.*, at *13.  Nor did defendant "draft the content of the emails sent by the publishers; review or approve them; know where . . . the publishers send emails; or decide the customers" the publishers targeted. *Id.*, at *14. Accordingly, the court held that the defendant did not take "any actions that are the subject of this litigation." *Id.*, at *13.  Instead, defendant "used third parties who sent the emails of which Plaintiff complains." *Id.*

So too here. AML, a foreign defendant, relies solely on third-party publishers to send email advertisements like the ones plaintiffs sue on. (Rudy Decl., ¶ 11.)  Like the defendant in *Zoobuh*, AML has no involvement with, or control over, the transmission or delivery of the emails. (*Id.*) It does not know the locations or the recipients to which the publishers send the emails; nor does AML decide the recipients to whom the publishers should send the emails other than to prohibit publishers from sending email advertisements to email addresses associated with recipients who have requested to "opt-out" of emails about AML. (*Id.*, ¶ 13.) The bottom line is that publishers control all aspects of transmitting the emails.  (*Id.*)

Moreover, email campaigns run by AML's publishers do not target California; nor could AML identify or target California residents because—unlike phone numbers (which include area codes)—email addresses are not connected to a

particular location. (*Id.*) There is, in other words, no basis for concluding that AML sought any protection from California. And thus, like the defendants in *Alsop* and *Zoobuh*, there is no specific jurisdiction over AML in California.

> 2.     Plaintiffs' claims do not arise out of AML's California-related activities

Plaintiffs' claims do not arise out of AML's forum-related activities because AML did not send the emails at issue. The requirement of forum-related activity "ensures that a defendant will not be haled into a jurisdiction solely as a result of . . . the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citation omitted).

Here, Plaintiffs' own Complaint—and the declaration submitted by AML—make clear that the only connection between AML and the claim is based on the unilateral activity of a third-party publisher. AML is mentioned in an email sent by a third party. The conduct of these publishers allegedly sending emails to California Plaintiffs cannot create specific jurisdiction over AML. (*See* Rudy Decl.) Moreover, that Plaintiffs received the challenged emails in California does not create specific jurisdiction because Plaintiffs' "contacts with the defendant and forum" do not drive "the jurisdictional analysis." *Walden*, 134 S. Ct. at 1125. In other words, that Plaintiffs allege harm in California is insufficient to support personal jurisdiction over Hong Kong-based AML.

> 3.     It would offend traditional notions of fair play and substantial justice for this Court to exercise jurisdiction over AML

Even if Plaintiffs could establish purposeful availment and that their claims arise out of AML's California-related activities, the Court should still dismiss Plaintiffs' Complaint. This Court's exercise of jurisdiction over AML would be unfair. *See Asahi Metal Industry Co., Ltd. v. Superior Court*, 480 U.S. 102, 113 (1987). To determine the reasonableness of jurisdiction, the Court should consider

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

"the burden on the defendant, the interests of the forum State, and the plaintiff's interests in obtaining relief." *Id.*

Applied here, the burden on AML of having to litigate in California is difficult to understate. All of AML's documents, witnesses, and operations that might be relevant to this action are in Hong Kong, its principal place of business. And California's interest in permitting relief against a Hong Kong company based on emails that the company did not direct, control, or know were sent to California citizens is minimal—at best. (Rudy Decl., ¶¶ 12-15.) Lastly, Plaintiffs' interests in obtaining relief (to the extent Plaintiffs can state a claim) is minimal because Plaintiffs can pursue the proper parties in the appropriate forum, just not AML in California.

It follows that exercising jurisdiction over AML would not comport with traditional notions of fair play and substantial justice. This Court should decline to do so. *See Cybersell Inc. v. Cybersell Inc.*, 130 F.3d 414, 418 (9th Cir. 1997) (opining that an "Internet advertisement alone is" insufficient "to subject the advertiser to jurisdiction in" a plaintiff's home state).

## IV. Plaintiffs' claims fail because they do not allege AML sent or authorized the emails. Or, if the statute applies to AML, it violates the First Amendment

If this Court has jurisdiction over AML, the claims fail as a matter of law. Either Plaintiffs' pleadings fail to state a claim because AML is neither directly nor vicariously liable for the emails at issue; or, if the statute applies "per se" to AML as Plaintiffs allege, then it violates the First Amendment.

### a. Legal standards

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *See Falkowski v. Imation Corp.*, 309 F.3d 1123, 1132 (9th Cir. 2002). The substantive law of California applies in this removed diversity action. *Stanford Ranch, Inc. v. Maryland Cas. Co.*, 89 F.3d 618, 624 (9th Cir. 1996). Specifically, this Court is bound by the decisions of the California Supreme Court. *Id.* Where—

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

as here—the California Supreme Court has not addressed the issue, this Court "must predict how the highest state court would decide the issue," including considering "intermediate appellate court's" decisions. *Lewis v. Tel Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996) (internal quotations and citations omitted). However, where an intermediate appellate court's reasoning does not provide "convincing evidence" of how the "state supreme court would decide" the issue—this Court should reach its own conclusion about controlling California law. *Id.* (citations omitted).

AML's Motion also challenges the application of section 17529.5 to AML under the First Amendment to the United States Constitution, which provides: "Congress shall make no law . . . abridging the freedom of speech[.]" The Fourteenth Amendment makes this limitation applicable to the States. *Gitlow v. New York*, 268 U.S. 652, 666 (1925) (incorporating the First Amendment protections through the Fourteenth Amendment). Speech "does not lose its First Amendment protection because money is spent to project it, as in a paid advertisement of one form or another." *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 761 (1976). Restrictions on commercial speech must survive intermediate scrutiny under *Central Hudson Gas & Electric Corporation v. Public Service Commission*, 447 U.S. 557, 561-62 (1980). *See Retail Digital Network, LLC v. Prieto*, 861 F.3d 839, 841 (9th Cir. 2017) (en banc).

AML's challenge here is as-applied (rather than facial). AML thus must show "the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable for valid application to others." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998). "A successful as-applied challenge does not render the law itself invalid but only the particular application of the law." *Id.* Finally, Plaintiffs bear the burden of justifying the "restriction on commercial speech" here. *Edenfield v. Fane*, 507 U.S. 761, 770 (1993).

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

**b.**   **Plaintiffs do not adequately allege that AML is vicariously liable and so their claims fail**

Generally, a defendant is not liable for the conduct of others. *See, e.g.*, *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1263 (9th Cir. 2019) (upholding district court decision affirming judgment that party who did not legally cause statutory violation is "not responsible" for that violation). However, under the theory of vicarious liability, in certain instances a defendant can be liable for the actions of another if they exercise control over the conduct or activities of that other—an "agent." *See Daniels v. Select Portfolio Serv., Inc.*, 246 Cal.App.4th 1150, 1178 (2016). Except for harm caused by ultrahazardous activities, a defendant is never strictly liable for the conduct of another. *See Moore v. R.G. Indus., Inc.*, 789 F.2d 1326, 1328 (9th Cir. 1986) (describing when a product is considered "ultrahazardous").

Plaintiffs do not allege that AML sent the emails at issue. Rather, they contend that AML is advertised in emails with misleading domain names sent by others—making AML liable. (Compl., ¶ 52 ("Defendants *advertised* in unlawful spams . . ." (emphasis added)). And, except for conclusory allegations, Plaintiffs do not allege that AML is vicariously liable or otherwise exercised any control or direction over the individuals who sent the emails at issue here. (Compl., ¶ 49.)  Indeed, Plaintiffs contend that AML is "strictly liable for advertising in spams" even if AML did not know "that the spams were sent." (*Id*.)  As such, they have not stated a valid claim.

**i.**   **Under California law, vicarious liability requires a joint venture, agency, or an employment relationship—which Plaintiffs fail to allege**

"Vicarious liability is the exception . . . [and it applies] only where a person actually acts through another to accomplish his own ends that the law will or should impose such vicarious liability." *Roberts v. Craig*, 124 Cal. App. 2d 202, 208 (1954); *see also United States v. Cyberheat, Inc.*, CV-05-457-TUC-DCB, 2007 U.S. Dist. LEXIS 15448, *17 (D. Ariz. March 2, 2007) (opining that "vicarious liability is the exception to the normal principal of individualized fault"; holding that the federal

- 12 -

CAN-SPAM Act requires a showing of vicarious liability).   A plaintiff only adequately alleges vicarious liability by pleading specific facts establishing shared control over the offending activity—employment, a joint venture, or agency. *See Brown v. USA Taekwondo*, 40 Cal App. 5th 1077, 1104 (2019) (holding plaintiffs failed to allege "sufficient facts" to establish defendants' vicarious liability).

Specifically, a joint venture requires "joint control over the venture." *Id.* The "mere fact that one party is to receive benefits" does not "as a matter of law," make that party a "joint venturer." *Id.*; *see Orosco v. Sun-Diamond Corp.*, 51 Cal. App. 4th 1659, 1666 (1997) (holding that defendant agricultural cooperative was not engaged in joint venture with plaintiff's employer to run raisin plant where the cooperative did not control or operate plant or share in profits). Likewise, agency exists where one person agrees that the other "shall act on his behalf and subject to his control, and consent by the other to so act." *Secci v. United Independent Taxi Drivers, Inc.*, 8 Cal. App. 5th 846, 855 (2017).   "The principal must in some manner indicate that the agent is to act for him, and the agent must [be] subject to his control." *Id.*

Plaintiffs contend that liability here is "strict"—by which they mean that AML is liable even if it had *no* role in sending the emails. It is enough, according to Plaintiffs, that AML is advertised in the offending emails.  Plaintiffs thus do not allege that AML employed any party who sent the emails at issue in this case. Nor do they sufficiently allege a joint venture or agency relationship with the parties who sent the spam emails. It follows that Plaintiffs do not allege any basis for imposing vicarious liability again AML, and they do not allege that AML sent or is responsible for the emails at issue.

More precisely, there is no allegation that AML exercised "joint control" over the sender of the emails. On the contrary, Plaintiffs' allegations emphasize the alleged "benefit" AML purportedly receives from the emails. As explained above, under settled California law, the mere receipt of a benefit is simply insufficient to establish vicarious liability—even at the pleading stage. *See Brown*, 40 Cal App. 5th at 1104.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Similarly, Plaintiffs do not adequately allege any "agency" relationship. Plaintiffs do not allege that AML consented to some publisher sending the false or misleading emails sued on here. *See id.* Rather, Plaintiffs rest on their conclusory allegation that AML is "strictly liable" based on their mere appearance in "unlawful spam." These allegations are insufficient as a matter of law, and Plaintiffs' arguments otherwise misstate California law.

**ii.** **The statute's strict liability does not relieve Plaintiffs of burden to plead that AML is responsible, directly or vicariously, for the emails**

California's anti-spam statute imposes strict liability on any "person or entity to advertise in a commercial e-mail advertisement." Cal. Bus. & Prof. Code § 17529.5(a). By its plain language, the statute's strict liability does not relieve Plaintiffs of their burden of adequately pleading that AML is at fault—either directly or through vicariously liability—for the emails at issue. Namely, the statute requires that Plaintiffs adequately allege fault because it only makes a "person or entity liable" if they *advertise* in a commercial e-mail advertisement." *Id.* (emphasis added); *see also* Cal. Bus & Prof. Code § 17529.1(a) (defining "Advertiser" to mean "a person or entity that advertises through the use of commercial e-mail advertisements"). The statute thus requires a party to engage in affirmative conduct of "advertising"— directly or vicariously. A party with no role in transmitting an email necessarily cannot "advertise" through an email. Consistent with this fault requirement in the statute's plain language, the law reduces liability based on a defendant's establishment of "procedures" that "prevent unsolicited commercial e-mail advertisements." Cal. Bus. & Prof. Code § 17529.5(2). This provision makes no sense if the statute imposes liability regardless of a defendant's role in the transmission of an offending email.

Plaintiffs' Complaint conflates strict liability with vicarious liability and therefore misstates California law. Contrary to Plaintiffs' allegations, strict liability and vicarious liability are distinct concepts. That is, the existence of strict liability

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

does not relieve Plaintiffs of their burden of adequately alleging fault (either directly or through vicarious liability), *i.e*., that AML is responsible for the transmission of the emails at issue.

As explained above, vicarious liability makes a party liable for the conduct of another where there is some particular reason to do so—employment, agency, or a joint venture. Strict liability, in contrast, relieves a party of its burden of proving that the party being sued acted negligently. *See Vandermark v. Ford Motor Co.*, 61 Cal. 2d 256, 260-61 (1964). For instance, in the manufacturing context, the California Supreme Court has held that a manufacturer is "strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury[.]" *Id.* at 261. In this circumstance, because "the liability is strict it encompasses the defects *regardless of their source*, and therefore a manufacturer of a completed product cannot escape liability by tracing the defect to a component part supplied by another." *Id.* (citation omitted). Indeed, in this leading California Supreme Court case articulating the rationale for strict liability the California Supreme Court expressly distinguished "strict liability" from vicarious liability:

> Moreover, even before such *strict liabilit*y was recognized, the manufacturer of a completed product was subject to *vicarious liability* for the negligence of his suppliers or subcontractors that resulted in defects in the completed product.

*Id.* (emphasis added) (gathering cases).

Said another way, the purpose of strict liability is to relieve a plaintiff from the burden of proving negligent conduct. *See Wimberly v. Derby Cycle Corp*., 56 Cal. App. 4th 618, 632 (1997). However, even where a party is "strictly liable" for damages caused by some conduct, the plaintiff bears the burden of proving "fault," which includes "responsibility for" the harmful product entering "into the stream of commerce." *Id.* California's anti-spam statute imposes "strict liability" (a plaintiff

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

1   need not demonstrate negligence), but it does not relieve Plaintiffs of their burden to

2   establish fault—direct or vicarious liability.

3       The Ninth Circuit's analysis of vicarious liability in the context of a different

4   strict liability statute is instructive here. The Telephone Consumer Protection Act

5   ("TCPA") makes it unlawful to make certain telemarketing calls.  *See, e.g.*, 47 U.S.C.

6   § 227(b)(1)(A)(iii).  Like California's anti-spam statute, the TCPA is a "strict liability"

7   statute because it does not require that a plaintiff prove the defendant acted

8   negligently. That the defendant made the offending call (or fax) is sufficient. *See,*

9   *e.g.*, *Ahmed v. HSBC Bank USA, N.A.*, No. 15-edcv-2057-FMO (SPx), 2017 U.S. Dist.

10   LEXIS 183910, at *3 (C.D. Cal. Nov. 6, 2017) ("The TCPA is essentially a strict

11   liability statute." (citation and quotation omitted)).  Nonetheless, the Ninth Circuit

12   has explained that strict liability does not create "per se liability." *Henderson v.*

13   *United Student Aid Funds, Inc.*, 918 F.3d 1068, 1072 (9th Cir. 2019) (citation

14   omitted). Instead, even within the TCPA's strict liability regime, a plaintiff "must

15   show that there is an agency relationship" between the party sued and the party

16   responsible for the calls.  *See id.* at 1072 ("[A] court may not automatically attribute

17   a third-party caller's TCPA violations to a defendant.").

18       The same analysis applies here. Plaintiffs' Complaint alleging that AML is *per*

19   *se* liable for the emails at issue is incorrect and therefore their allegations are

20   inadequate. Because Plaintiffs fail to allege that AML is responsible—directly or

21   vicariously—for the emails at issue, their claims fail as a matter of law.

22       **iii.    The California Supreme Court would not follow *Hypertouch,***
23       ***Inc. v. ValueClick, Inc.*'s conflation of strict liability with**
        **vicarious liability**

24       Plaintiffs' argument confusing strict liability with *per se* liability is based

25   principally on the intermediate appellate court decision, *Hypertouch, Inc. v.*

26   *ValueClick, Inc.*, 192 Cal. App. 4th 805, 829 (2011). For two reasons, the California

27   Supreme Court is unlikely to follow *Hypertouch* and hold that AML is liable without

28   any allegations of vicarious liability.

First, as recounted above, strict liability and vicarious liability are distinct concepts under settled California law as articulated for decades by the California Supreme Court. That California's anti-spam statute does not require Plaintiffs to prove negligence does not relieve them of their burden of establishing fault. Neither the statute itself nor California Supreme Court precedent suggests AML can be held *per se* liable simply because AML allegedly appears in an email sent by a spammer. If language in *Hypertouch* implies otherwise, it is simply incorrect and this Court should not follow it. *See Ogden Martin Sys., Inc. v. San Bernardino Cty.*, 932 F.2d 1284, 1289 (9th Cir. 1991) (concluding that a California intermediate appellate decision was incorrectly decided and declining to follow it).

Second, the intermediate appellate court's holding in *Hypertouch* is not as categorical as Plaintiffs' Complaint suggests. It is true that in dicta the court in *Hypertouch* opined that the defendant could be liable without "knowledge of the e-mails." 192 Cal. App. 4th at 834. But the Court's actual holding relied on the fact that the party who was advertised in the emails contracted with "affiliates" who sent the commercial emails. *Id.* Indeed, the party advertised in the emails paid per-click for each "consumer lead" that the emails generated, and the company admitted that "thousands of" the "emails were sent by their affiliates." *Id.* Accordingly, despite some very broad language, *Hypertouch* is much more consistent with the law on vicarious liability recounted above: the party advertised in the emails actually contracted for the emails to be sent, hand knowledge and control they were sent, and thus was at fault under the statute.

The Court should dismiss Plaintiffs' Complaint because they fail to allege that AML is responsible for the emails at issue. Plaintiffs' allegation of *per se* liability misreads the statute and controlling case law.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Case No. 2:21-CV-03574
MOTION TO DISMISS

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

c.    **If Plaintiffs have adequately plead a claim, the California law violates the First Amendment as applied to AML in this circumstance**

If, as plead by Plaintiffs, the statute applies to AML, then California Business & Professions Code § 17529.5 violates the First Amendment. As mentioned above, Plaintiffs bear the burden of proving—with more than "mere speculation or conjecture"—that the restriction satisfies intermediate scrutiny under *Central Hudson*. *Edenfield*, 507 U.S. at 770-71.

The four-part *Central Hudson* test asks the following questions: First, does the challenged law regulate speech that is "neither misleading nor related to an unlawful activity?" Second, does the government have a "substantial interest" at stake? Third, does the law "directly advance" the government's interest? Fourth, would "a more limited restriction" be insufficient for that interest to "be served as well"? *Central Hudson*, 447 U.S. at 564. "If a law can go four for four, it passes constitutional muster. If not, the challenged law unconstitutionally hampers speech." *Dana's R.R. Supply v. AG*, 807 F.3d 1235, 1249 (11th Cir. 2015).

Applied to AML, Plaintiffs' construction of the anti-spam statute would hold AML liable simply for appearing in an email correspondence that it did not direct or otherwise attempt to send. That is, the law would punish AML for no more than attempting to participate in *lawful* and *non-misleading* speech. As Plaintiffs purport to apply it to AML, the law cannot survive fair application of *Central Hudson*'s intermediate scrutiny.

Applying each *Central Hudson* question in turn, first, the speech that purportedly renders AML liable is neither unlawful nor misleading. Rather, according to Plaintiffs' interpretation of the law, AML is liable merely because its name *appears* in email correspondence that might otherwise contain misleading information. (Compl., ¶ 49.) Controlling Supreme Court precedent makes clear that commercial speech that is neither itself misleading or false "in any way"—which is the case with AML's name—should receive robust protection under the First

Amendment. *See Virginia State Bd. of Pharmacy*, 425 U.S. at 759 (rejecting the exclusion of all commercial speech from First Amendment protection as an improper "simplistic approach"; striking down law that prohibited pharmacist from advertising prices of drugs). That *some* email advertisements can *sometimes* be misleading and also mention AML does not make the mention of AML in an advertisement misleading—as Plaintiffs allege. Nor is participating in email correspondence "unlawful." *See Dana's R.R. Supply*, 807 F.3d at 1249.

Second, the government's interest in punishing AML's lawful speech is far less compelling than the interests that normally provide a "substantial justification" for speech restrictions. California's rationale for punishing an entity like AML for being simply *mentioned* in spam is that the "the actual spammers can be difficult to track down." Cal. Bus. & Prof. Code § 17529(j). This derivative interest—chilling lawful commercial speech because some other speech by some other party may be harmful—is not substantial. It is far removed from the rationale that will justify muzzling lawful speech. *Cf. Rowan v. United States*, 397 U.S. 728, 738 (1970) (upholding ban that prohibited vendors from mailing advertisements to homes).

Considering the third and fourth *Central Hudson* questions together, there is not a reasonable fit between the law (which exposes AML to the possibility of thousands of dollars in damages for being *mentioned* in ads sent by a third party) and the asserted interest of preventing unlawful spammers. Plaintiffs must "demonstrate that the harms [they] recite are real and that [the speech] restriction will in fact alleviate them to a material degree." *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 188 (1999); *see In re Primus*, 436 U.S. 412, 438 (1978). "The State cannot regulate speech that poses no danger to the asserted state interest, nor can it completely suppress information when narrower restrictions on expression would serve its interest as well." *Central Hudson*, 447 U.S. at 565. "A 'very distant possibility of harm,' cannot justify proscription" of lawful speech. *In re Primus*, 436

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Case No. 2:21-CV-03574
MOTION TO DISMISS

U.S. 436 (prohibiting state from categorically regulating speech "in a prophylactic fashion") (citing *Mine Workers v. Illinois Bar Ass'n.*, 389 U.S. 217, 223 (1967)).

Concerning this lack-of-fit, the Ninth Circuit's decision in *Italian Colors Restaurant v. Becerra* is instructive. 878 F.3d 1165, 1176-77 (9th Cir. 2018). There, California enacted a "surcharge ban," which prohibited retailers from characterizing credit card fees as a "surcharge." *Id.* at 1170. The Ninth Circuit struck down the speech restriction. The Court reasoned that even *if* the State's interest in "consumer deception or other harm to the free market," might justify the restriction, the statute's "broad scope" rendered it incompatible with the First Amendment's categorical protections. Critically for the Ninth Circuit, the surcharge law covered "even plaintiffs' non-misleading speech"; thus, California could "more narrowly" tailor a restriction. "For example, the state could simply ban deceptive or misleading surcharges." *Id.* at 1178.

So too here. By Plaintiffs' reading, California's anti-spam statute attaches liability to a company *even if that company has no knowledge* of alleged illegality. California could certainly achieve their interest in preventing spam emails without sweeping in perfectly lawful speech like AML's name simply because the name is mentioned in email spam. *See Carey v. Population Servs. International*, 431 U.S. 678, 701-702 (1977) (opining that State's "arguments . . . do not justify the total suppression advertising" at issue). It follows that—as applied to AML on the facts of this case—the statute violates the First Amendment.

If Plaintiffs are correct that AML's mere mention in an email that allegedly includes false or deceptive information results in liability, the California law violates the First Amendment.

## V.   <u>Conclusion</u>

This Court lacks personal jurisdiction over AML.   There is no general jurisdiction because AML is a Hong Kong company—not "at home" in California. There is not specific jurisdiction because AML did not send the emails at issue. AML

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

certainly did not deliberately target California citizens to avail itself to the privilege of California's laws.

    If this Court disagrees and decides it has jurisdiction, dismissal is still appropriate for two independent reasons. First, Plaintiffs fail to state a claim as a matter of law because AML is not directly or vicariously liable for the emails at issue. Second, the law—as applied to AML in Plaintiffs' Complaint—violates the First Amendment by sweeping too broadly. It makes AML liable for its lawful speech because the parties who engage in unlawful speech are difficult to identify and punish. Under *Central Hudson*, such a sweeping prohibition on lawful speech contradicts the Constitution's First Amendment protections.

Dated:  July 6, 2021                          SQUIRE PATTON BOGGS (US) LLP


                                              By: s/ *Eric J. Troutman*
                                                  Eric J. Troutman
                                                  Brent R. Owen (Pro Hac)
                                              Attorneys for Defendant AML
                                              NETWORK LTD.

010-9234-0477/1/AMERICAS

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Case No. 2:21-CV-03574
MOTION TO DISMISS