UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-3574-GW-RAOx | Date | September 27, 2021 |
|---|---|---|---|
| Title | *Brian Lynch, et al. v. AML Network Ltd., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Terri A. Hourigan | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Timothy J. Walton | Brent R. Owens | |

**PROCEEDINGS:** **TELEPHONIC HEARING ON PLAINTIFF'S MOTION TO REMAND [27]; DEFENDANT AML NETWORK LTD.'S MOTION TO DISMISS THE COMPLAINT UNDER RULE 12(b)(2) OR, IN THE ALTERNATIVE, TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6) [18]; and SCHEDULING CONFERENCE**

Court hears argument as to Plaintiff's motion to remand. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court DENIES the motion to remand.

Court and counsel confer re motion to dismiss. Plaintiff will have until October 4, 2021 to file a motion for jurisdiction discovery. Defendant will respond by October 12, 2021. The motion to dismiss is continued to October 18, 2021 at 8:30 a.m.

|  | : | 12 |
|---|---|---|
| | Initials of Preparer | JG |

<u>*Brian Lynch et al v. AML Network Ltd. et al*</u>; Case No. 2: 21-cv-03574-GW-(RAOx)
Tentative Ruling on Motion to Remand

I. <u>Background</u>

  Plaintiffs Brian Lynch, Barbara Qadri, Jonathan Ruelas, Ronan Shepherd, James Andrews, Angela Neilson, and Julia Durward sued Defendant AML Network Ltd.[1] for violations of California Business and Professions Code §§ 17529.5(a)(1) and 17529.5(a)(2) arising from unsolicited emails. *See generally* Complaint, Docket No. 1-1. Plaintiffs seek statutory damages of $1,000 per email, attorneys' fees, and costs. *Id.* at 13-14.

  Plaintiffs allege that they are individuals who resided in California at all relevant times. *Id.* ¶ 4. Defendant is a Hong Kong private limited company, headquartered in and doing business in Hong Kong. *Id.* ¶ 6; Defendant's Response to August 30, 2021 Order to Show Cause, Docket No. 25, at 2. Defendant purportedly owns and operates several websites and engages numerous third-party advertising networks and affiliates to advertise for Defendant or its clients. Complaint ¶ 2. Defendant allegedly used these affiliates to send at least 1,017 unlawful Unsolicited Commercial Emails ("spams") to Plaintiffs between November 2018 and December 2020. *Id.* ¶¶ 1, 26. Plaintiffs received the emails "at their California [email] addresses." *Id.* ¶ 20. The emails advertised "various consumer services sold at the various web sites owned by [Defendant]." *Id.* ¶ 21. Plaintiffs allege that they never gave Defendant direct consent to send the commercial emails and did not have a preexisting or current business relationship with Defendant. *Id.*

  Some of Defendant's advertising affiliates allegedly send millions of unlawful commercial emails to recipients without consent. *Id.* ¶ 2. Many of the emails – including those sent to Plaintiffs – contain false and/or misrepresented headers, such as "from" names or email addresses that misrepresent or hide the sender's identity. *Id.* ¶¶ 2, 23-25. The emails contain the advertisements, but the advertisements themselves are hosted remotely on Defendant's servers. *Id.* ¶ 32. Defendant purportedly uses the remote hosted images "to essentially self-destruct the emails to prevent the recipients from identifying [Defendant] or the senders." *Id.* ¶ 33. Additionally, Plaintiffs allege that at least 121 of the emails sent to them by Defendant falsely list third-party domain names without permission from the third parties. *Id.* ¶ 41. Plaintiffs' two

---

[1] Plaintiffs initially also named Domains by Proxy, LLC and Enom LLC as Defendants in this matter, but filed a request for dismissal as to both parties on April 5, 2021. *See* Docket No. 1-2. The Clerk of the Los Angeles Superior Court entered the dismissal on April 7, 2021. *See id.*

causes of action arise under Cal. Bus. & Prof. Code § 17529.5(a)(2) and (a)(1), respectively. *Id.* ¶¶ 51–73, 74–79.

Plaintiffs filed their Complaint in the Los Angeles County Superior Court on March 9, 2021, and Defendant timely removed the action to federal court on April 27, 2021, after receiving a copy of the Complaint on March 30, 2021. *See generally* Notice of Removal, Docket No. 1. Before the Court is Plaintiffs' motion to remand pursuant to 28 U.S.C. § 1447(c) for lack of Article III standing. *See* Motion to Remand, Docket No. 27. Defendant has filed an opposition brief. *See* Docket No. 28.

## II. <u>Legal Standard</u>

"Federal courts are courts of limited jurisdiction," so they "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may invoke federal removal jurisdiction if the case could have been filed originally in federal court. 28 U.S.C. § 1441. "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (internal citations omitted). If the defendant fails to meet this burden, the case will be remanded to the state court. 28 U.S.C. § 1447. Because the Constitution limits Article III federal courts' jurisdiction to "cases" and "controversies," a plaintiff's pleadings must establish standing. U.S. Const art. III, § 2. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins* (*Spokeo I*), 578 U.S. 330, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) and *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).

The injury-in-fact element – at issue in this motion – requires the plaintiff to "show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo I*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). This element "is a constitutional requirement," so "'Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Id.* at 1547–48 (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997)). As a result, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right" because "Article III standing requires a concrete injury even

in the context of a statutory violation." *Id.* at 1549. "To establish such an injury, the plaintiff must allege a statutory violation that caused him to suffer some harm that 'actually exists' in the world; there must be an injury that is 'real' and not 'abstract' or merely 'procedural.'" *Robins v. Spokeo, Inc.* (*Spokeo II*), 867 F.3d 1108, 1112 (9th Cir. 2017) *cert. denied*, 138 S. Ct. 931 (2018) (quoting *Spokeo I*, 136 S. Ct. at 1548–49); *see also Spokeo I*, 136 S. Ct. at 1549 ("Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete."). "In other words, even when a statute has allegedly been violated, Article III requires such violation to have caused some real – as opposed to purely legal – harm to the plaintiff." *Id.*

In determining whether a statutory harm is sufficiently concrete to be an injury in fact, a court looks to whether the statute codifies a substantive or a procedural right. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982–83 (9th Cir. 2017). A substantive provision "protects concrete interests," so the plaintiff need only plead a violation of that provision to establish an injury in fact. *Id.* at 983; *see also Silverstein v. Keynetics, Inc.*, No. LACV1804100JAKAGRX, 2018 WL 5795776, at *7 (C.D. Cal. Nov. 5, 2018) ("Where a statute codifies a substantive right, a plaintiff need not plead any additional harm beyond a violation of the statute to obtain standing."). A claim under a procedural provision, on the other hand, needs to be accompanied by allegations of a concrete harm in order to establish the requisite injury in fact. *Id.* at 982; *see also Spokeo I*, 136 S. Ct. at 154 (A plaintiff may not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."). To determine whether a provision is substantive – and thus protects concrete interests – or procedural, the Court looks to "both history and the judgment" of the legislature. *Spokeo I*, 136 S. Ct. at 1548; *see also Eichenberger*, 876 F.3d at 982–83 (looking to the text, purpose, and history of Video Privacy Protection Act of 1988 ("VPPA") provision to conclude the relevant provision was substantive); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1040 (9th Cir. 2017) (same for the Telephone Consumer Protection Act of 1991 ("TCPA")).

### III. Discussion

Plaintiffs argue that this Court should remand the case to state court based on a lack of Article III standing because the Complaint does not allege an injury in fact. Plaintiffs make several arguments in support of this position. First, Plaintiffs assert that the liquidated damages for which § 17529.5 provides are penalties intended to control the behavior of spammers and are not connected to injuries suffered by spam recipients. *See* Motion to Remand, Docket No. 27 at

13–14. Thus, Plaintiffs' claims for statutory damages do not suffice to establish an injury in fact. Second, Plaintiffs also contend that § 17529.5 is a deceptive advertising statute, and the Complaint does not allege an economic injury required by such a statute to establish standing. *Id.* at 15. Moreover, Plaintiffs continue, § 17529.5 is not intended to protect concrete interests and thus the provision is not substantive. *Id.* at 15–17. Finally, Plaintiffs assert that the Complaint does not allege any actual harm resulting from the emails, so allegations of the statutory violations, without more, do not confer Article III standing. *Id.* at 17–18.

As Plaintiffs acknowledge, the operative inquiry before the Court is whether the relevant provisions of § 17529.5 were established to protect concrete interests, and whether the allegations in the Complaint demonstrate harm to those interests. Because § 17529.5 codifies a substantive right, the Court is inclined to find that Plaintiffs have pleaded an injury in fact sufficient to confer Article III standing.

California Business and Professions Code § 17529.5 prohibits, as relevant to this case, transmission of "(1) [an] e-mail advertisement [that] contains or is accompanied by a third-party's domain name without the permission of the third party," and "(2) [an] e-mail advertisement [that] contains or is accompanied by falsified, misrepresented, or forged header information." On its face, the text of § 17529.5 indicates that the provisions are substantive prohibitions on the transmission of these types of emails. They do not, for example, resemble the Fair Credit Reporting Act ("FCRA") provisions at issue in *Spokeo I*, through which "Congress plainly sought to curb the dissemination of false information by *adopting procedures* designed to decrease that risk." *Spokeo I*, 136 S. Ct. at 1550 (emphasis added). An allegation that the defendant in that case had violated these procedures, without more, was not sufficient to establish an injury in fact because a "violation of one of the FCRA's procedural requirements may result in no harm." *Id.*

In contrast, § 17529.5 prohibits the *transmission* of certain types of emails; in other words, the provision protects the concrete interest of preventing such transmissions. It does not establish procedures or regulate internal conduct as did the FCRA provisions in *Spokeo*. *See Spokeo I*, 136 S. Ct. at 1550. On the contrary, § 17529.5 closely resembles the Telephone Consumer Protection Act ("TCPA"), which prohibits junk faxes and unsolicited advertising calls. The Ninth Circuit has expressly held that "a violation of the TCPA is a concrete, *de facto* injury," citing the fact that "invasions of privacy, intrusion upon seclusion, and nuisance" are

4

harms American courts have long recognized.[2]  *Van Patten*, 847 F.3d at 1043.  In passing the TCPA, "Congress sought to protect consumers from the unwanted intrusion and nuisance of unsolicited telemarketing phone calls and fax advertisements."  *Id.*  So too, here, with the Legislature's passage of § 17529.5.

This conclusion is supported by the history and judgment of the California legislature ("Legislature").  In the section immediately preceding the one under which Plaintiffs brought their claims, the Legislature set out its findings and declarations, which read in relevant part:

> (b) The increase in spam is not only an annoyance but is also an increasing drain on corporate budgets and possibly a threat to the continued usefulness of the most successful tool of the computer age.
> (c) Complaints from irate business and home-computer users regarding spam have skyrocketed, and polls have reported that 74 percent of respondents favor making mass spamming illegal and only 12 percent are opposed, and that 80 percent of respondents consider spam very annoying.
> . . .
> (e) Like junk faxes, spam imposes a cost on users, using up valuable storage space in e-mail inboxes, as well as costly computer band width, and on networks and the computer servers that power them, and discourages people from using e-mail.
> . . .
> (g) Like traditional paper "junk" mail, spam can be annoying and waste time, but it also causes many additional problems because it is easy and inexpensive to create, but difficult and costly to eliminate.
> (h) The "cost shifting" from deceptive spammers to Internet business and e-mail users has been likened to sending junk mail with postage due or making telemarketing calls to someone's pay-per-minute cellular phone.
> (i) Many spammers have become so adept at masking their tracks that they are rarely found, and are so technologically sophisticated that they can adjust their systems to counter special filters and other barriers against spam and can even electronically commandeer unprotected computers, turning them into spam-launching weapons of mass production.
> . . .
> (l) In addition, spam is responsible for virus proliferation that can cause tremendous damage both to individual computers and to business systems.

---

[2] As relevant here due to the similarity in medium, the Ninth Circuit has also held that a text message is a "call" for purposes of the TCPA.  *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

Cal. Bus. & Prof. Code § 17529.  Findings (e) and (h) explicitly compare the harms caused by spam emails to injuries caused by junk faxes and spam telephone calls, which (as discussed above) the Ninth Circuit has recognized as injuries in fact sufficient to confer Article III standing.  *See Van Patten*, 847 F.3d at 1043.  As this Court recognized in a substantially similar case, "[t]he legislative findings support the conclusion that Cal. Bus. & Prof. Code § 17529.5 codifies a substantive right to be protected from spam, and that a person who is the subject of a violation of that right sustains injuries including lost productivity and resources, annoyance, consumption of valuable digital storage space and financial costs." *Durward v. One Techs. LLC*, No. CV 19-6371-GW-AGRX, 2019 WL 4930229, at *8 (C.D. Cal. Oct. 3, 2019) (quoting *Silverstein v. Keynetics, Inc.*, No. LACV1804100JAKAGRX, 2018 WL 5795776, at *9 (C.D. Cal. Nov. 5, 2018)).

   Plaintiffs' argument that an economic injury needs to be alleged for Article III standing in a false advertising case is unavailing here.  For one, Plaintiffs' assertion relies on *Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015), but that case addresses injury in fact under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–10, False Advertising Law ("FAL"), Cal. Bus. & Prof.Code §§ 17500–09, and Consumer Legal Remedies Act ("CLRA"), Cal. Civ.Code §§ 1750–84.  *See Reid*, 780 F.3d at 957.  The statutes at issue there are *consumer* protection laws, which of course require that a plaintiff be a consumer and have "paid more for a product than they otherwise would have paid, or bought it when they otherwise would not have done so." *Id.* at 958.  The provision at issue in this case is not so limited: a purchase is not a prerequisite to suffering the harms of spam emails detailed in § 17529.  In this same vein, Plaintiffs' argument also fails because it misidentifies the injury.  The substantive right § 17529.5 is protection from unwanted spam emails – not necessarily protection from financial harm.  An economic injury would be *sufficient* to show an injury in fact, but it is not *necessary*.

   Plaintiffs also assert that because they seek only statutory damages, not actual damages, their allegations do not sufficiently allege an injury in fact.  But the Court would conclude that this, too, is based upon the flawed premise that § 17529.5 – including the provision for statutory damages of $1,000 per email – is not a substantive provision.  Plaintiffs' first claim includes allegations that Plaintiffs received "at least 1,107 spams between November 2018 and December 2020 inclusive" and that "[e]ach and every spam had materially misrepresented and/or deceptive

6

information contained in or accompanying the headers in violation of Business & Professions Code § 17529.5(a)(2), due to the use of misrepresented From Names and/or From Email Addresses containing domain names registered so as to not be readily traceable to the sender." Complaint ¶¶ 26, 53.  And Plaintiffs' second claim includes allegations that "Defendants advertised in unlawful spams sent to the email addresses of Plaintiffs in California" and "Plaintiffs are informed and believe and thereon allege that 121 of the spams contains or is accompanied by a third-party's domain name without the permission of the third party in violation of Business & Professions Code § 17529.5(a)(1)." *Id.* ¶¶ 75, 76.  The transmission and receipt of these emails – as alleged by Plaintiffs – constitutes an injury in fact sufficient confer Article III standing.  *See Silverstein*, 2018 WL 5795776, at *9 ("Cal. Bus. & Prof. Code § 17529.5 'identifies a substantive right ... that suffers any time' a prohibited spam message is transmitted." (quoting *Eichenberger*, 876 F.3d at 983)).

   Nor does the Supreme Court's recent decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), disturb this conclusion.  In that case, a class of 8,185 people sued a credit reporting agency, claiming that TransUnion failed to use reasonable procedures to ensure the accuracy of the class members' credit files.  *TransUnion*, 141 S. Ct. at 2200.  But even assuming the inaccuracies in the files, the Supreme Court nonetheless held that only the 1,853 class members whose data was transmitted to third-party businesses had Article III standing.  *Id.*  That logic would support the conclusion in this case.  The reasonable-procedures claim in *TransUnion* alleged only a "bare procedural violation, divorced from any concrete harm[.]"  *Spokeo I*, 136 S. Ct. at 154.  Because the 6,332 class members whose data had not been transmitted to third parties could not allege a procedural violation *and* the requisite concrete injury, they "did not suffer a concrete harm."  *TransUnion*, 141 S. Ct. at 2212.  In essence, the Supreme Court reaffirmed its holding in *Spokeo I*, more clearly delineating between purely procedural violations (even if egregious) and substantive ones.  Here, § 17529.5 is a substantive provision, not a procedural one.  Thus, the allegation that Defendant violated § 17529.5 by sending spam emails to Plaintiffs sufficiently establishes an injury in fact; no other allegations of harm are necessary.

### IV. Conclusion

   Based on the foregoing discussion, the Court would **DENY** the motion to remand.[3]

---

[3] The Court would also find that, given its conclusion here, jurisdictional discovery is unnecessary.  There are no disputed pertinent facts, and further discovery would not aid the Court in making its findings.  *See Am. W. Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989) ("It is clear that the question of whether to allow discovery

is generally within the discretion of the trial judge. However, where pertinent facts bearing on the question of jurisdiction are in dispute, discovery should be allowed." (internal citations omitted)).